IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JOHNNY L. HARDEMAN,
a/k/a. Lo'Re Pink,[1]

                Plaintiff,

v.                               **Case No. 19-CV-110-JFH-SPS**

JAMES J. SMASH, et al.,

                Defendants.

**<u>OPINION AND ORDER</u>**

      This action is before the Court on Defendants' motion to dismiss or for summary judgment. The Court has before it for consideration Plaintiff's complaint [Dkt. No. 1], defendants' motion [Dkt. No. 56], Plaintiff's response [Dkt. No. 59], and a special report prepared by the Oklahoma Department of Corrections ("DOC") at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) [Dkt. No. 55].

      Plaintiff is a pro se state prisoner who is in the custody of the DOC and incarcerated at Oklahoma State Penitentiary ("OSP") in McAlester, Oklahoma. She[2] brings this action under the authority of 42 U.S.C. § 1983, seeking monetary and injunctive relief for alleged constitutional violations occurring during her incarceration at OSP. The defendants are:

---

[1] Plaintiff was granted a legal name change on November 7, 2017. *See Hardeman v. Smith*, No. CIV 16-238-RAW-SPS, slip op. at 1 n.1, 2018 WL 1528160, at *1 n.1 (E.D. Okla. June 3, 2016) (unpublished).

[2] Because Plaintiff identifies as female, female pronouns are used in this Opinion and Order. *See Hardeman v. Smith*, 764 F. App'x 658, 659 n.1 (Feb. 22, 2019) (unpublished).

James J. Smash, DOC Mental Health Administrator; Patricia Jones-Pilkington a/k/a Patricia Jones, DOC Staff Psychologist; Dr. LeeAnn Self, OSP Mental Health Provider; Dr. Jana Morgan, DOC Chief Mental Health Administrator; Regina VanBlaricom, OSP Health Services Administrator; Jerry Perry, OSP Unit Manager; Millicent Newton-Embry, DOC Regional Director; Buddy Honaker, DOC Medical Services Administrator; Charles "Chuck" Roden, OSP Policy and Procedure Administrator; Joel McCurdy, DOC Chief Medical Officer; Mike Carpenter, OSP Warden; and David Cincotta, DOC General Counsel ("Defendants").

**Plaintiff's Allegations**

Although Plaintiff's complaint is illegible in portions and very repetitive, the following claims appear to have been raised:

**Claim One:**   Plaintiff alleges she is a transgender woman who always has considered herself a woman.  She claims that for decades, she was denied gender-affirming care and treatment, until in December 2015, Dr. Heather Diaz at OSP examined her for gender dysphoria.  Dr. Diaz allegedly diagnosed Plaintiff with gender dysphoria, but described the condition as suspect and recommended a follow-up.  Plaintiff allegedly received no treatment after that time. [Dkt. No. 1 at 17].

On or about July 28, 2018, Plaintiff wrote Dr. Smash, DOC Mental Health Administrator, and Dr. Self, OSP Mental Health Provider, a Medical Health Request asking to receive make-up, hormones, cosmetics, clothing, etc.  Plaintiff had learned of a new policy allowing transgender inmates to possess these items.  Dr. Self and Dr. Smash denied

Plaintiff another gender dysphoria evaluation, because in May 2017, Dr. Jones-Pilkington, DOC Psychologist, determined that Plaintiff did not have gender dysphoria. *Id*. at 18.

Plaintiff maintains that Dr. Jones-Pilkington never examined her for gender dysphoria. In May 2017, however, Dr. Jones-Pilkington talked with her for 1-1/2 hours about Plaintiff's filing a lawsuit concerning mental health and prison officials. Gender identity issues were not discussed in the meeting. Plaintiff had no other contact with Dr. Jones-Pilkington before or after the May 2017 encounter. *Id*. at 18-19.

After several months, Plaintiff filed a request to Dr. Smash, asking why he was using Dr. Jones-Pilkington's evaluation instead of Dr. Diaz's conclusion. Plaintiff asked for a third evaluation, because the two doctors had arrived at different conclusions. The request was denied by Dr. Smash and Dr. Self. *Id*. at 19-20.

On December 19, 2018, Plaintiff filed a grievance to Defendant Regina VanBlaricom, setting out the efforts Plaintiff had taken to get her desired treatment and care. VanBlaricom denied Plaintiff another gender dysphoria evaluation, stating she had reviewed Plaintiff's medical records, and another evaluation was not warranted. *Id*. at 20.

On January 10, 2019, Plaintiff appealed to the Administrative Review Authority, complaining that the defendants had chosen to follow Dr. Jones-Pilkington's recommendations. Plaintiff requested another examination, because she was receiving no treatment. On February 4, 2019, Defendant Buddy Honaker, DOC Medical Services Administrator, also accepted Dr. Jones-Pilkington's assessment, stating that the relevant DOC policy does not require additional evaluations to confirm a mental or medical

diagnosis. Defendant Honaker further stated he had reviewed Plaintiff's medical jacket and determined that another gender dysphoria examination was not warranted under DOC Policy OP-140147. *Id*. at 21.

Plaintiff next asserts he has been in contact with Defendant Jana Morgan, the DOC's Chief Mental Health Officer, since 2009-2010 when Morgan worked as the OSP Mental Health Administrator. On or about December 3, 2015, Morgan informed Plaintiff of Morgan's contact with Dr. Diaz regarding a gender dysphoria exam for Plaintiff. Since 2015, however, there was no follow-up after the exam. *Id*. at 22-23. Plaintiff is certain that Morgan gave Dr. Jones-Pilkington directions to perform a gender dysphoria exam on Plaintiff in May 2017, however, Plaintiff claims she never received an actual gender dysphoria evaluation. *Id*. at 23.

On November 13, 2018, Plaintiff submitted to Defendant Morgan a medical request for treatment and care, however, on December 12, 2018, Morgan denied the request. Morgan advised that she had reviewed Plaintiff's medical record and determined that Plaintiff did not need another gender dysphoria examination. Plaintiff contends Morgan's failure to personally examine her was done maliciously and in bad faith, and Plaintiff suffered physical and emotional distress as a result. *Id*. at 23-24.

On September 13, 2018, Plaintiff wrote Defendant Charles Roden, the OSP Policy and Procedures Administrator, requesting him to upgrade the OSP property policy for transgender and gender nonconforming inmates to conform with the property matrix for female inmates. Plaintiff then would be able to purchase cosmetics and clothing that

female inmates can buy.  Defendant Roden did not answer the request, instead stating Plaintiff's request was being sent to Mental Health for action.  Plaintiff claims Roden violated prison policy by failing to quote the applicable policy or state the reason he refused to personally answer Plaintiff's request.  Plaintiff contends Roden's response to the request indicated Roden's bad faith and collusion with the other defendants to deny Plaintiff the treatment and care she seeks.  Roden also allegedly was malicious when he verbally insulted Plaintiff, causing intentional infliction of emotional distress.  *Id.* at 24-25.

Plaintiff next claims Defendant Jerry Perry, OSP Unit Manager, had worked at a DOC facility in Stringtown, Oklahoma, where Plaintiff previously was incarcerated. Plaintiff claims that Officer Sanders, an officer at Stringtown, had locked Plaintiff in a bathroom and forced Plaintiff to perform oral sex.  Defendant Perry knew Sanders and told Plaintiff that "prison staff stick together" and that Plaintiff's allegations against Sanders made DOC look bad.  *Id.* at 25.

Plaintiff alleges he was received on Defendant Perry's unit in May 2015, and from that date Perry has made her life difficult.  On or about May 19, 2015, Perry allegedly lost Plaintiff's property.  Shortly thereafter, Perry refused to follow the Prison Rape Elimination Act ("PREA") Policy in DOC OP-030601 by removing Plaintiff from involuntary segregation when Plaintiff was found non-culpable in a PREA investigation.  Perry allegedly said that because Plaintiff had filed a grievance, he never would release her from solitary confinement.  *Id.*

Plaintiff further asserts that on or about December 8, 2015, at an interview regarding

Plaintiff's gender dysphoria, Perry interfered in the examination by saying, "I [Perry] will never allow 'that' to get off solitary, transfer, job, or look like a woman." Perry then stated he personally did not like Plaintiff and stormed out of the office. Plaintiff claims Perry's actions caused her to suffer permanent emotional and physical distress. *Id.* at 26.

Plaintiff further claims that Perry has shown a pattern of retaliatory tactics. For example, Perry allegedly disregards the prison policy specifically stating that a transgender inmate cannot be left in solitary confinement based on the fact that he or she is transgendered, or because of false complaints, or because a prison official does not like the particular inmate. *Id.*

On or around February 2018, Perry allegedly humiliated Plaintiff in front of a dozen staff members when Plaintiff was attempting to update her records with her legal name change. Perry allegedly threw Plaintiff's court papers and a grievance response from the warden stating that Perry must accept Plaintiff's name change. Perry then "went on a rampage," directing the solitary unit staff never to refer to Plaintiff by her legal name or with her preferred pronouns. *Id.* at 26-27.

Also, on or around May 2018, Perry allegedly found Plaintiff guilty of misconducts that Perry acknowledged were false because of Plaintiff's complaint against Perry. On or around February 6, 2019, Perry assigned Plaintiff to permanent solitary confinement, allegedly because she had filed a petition for a writ of mandamus to force Perry to respect her legal name. Plaintiff maintains Perry's action had no penological justification and constituted deliberate indifference. *Id.* at 27.

6

Plaintiff next asserts Defendant Joel McCurdy, the DOC Chief Medical Officer, is supposed to ensure that all medical employees comply with state and federal laws, as well as prison policies. On or around January 15, 2019, McCurdy was advised that Defendant Honaker had misquoted a medical policy to deny Plaintiff treatment and care, however, McCurdy allegedly failed to correct Honaker or to change the policy. Plaintiff claims McCurdy's failure to act was done in bad faith to deny treatment and care to Plaintiff and resulted in Plaintiff's emotional distress. *Id*. at 27-28.

Plaintiff next alleges Defendant Millicent Newton-Embry, DOC Regional Director, is from Plaintiff's hometown, and they knew each other when younger. Plaintiff claims Newton-Embry has retaliated against Plaintiff for personal reasons arising from their childhoods and hometown issues. Plaintiff claims she has contacted Newton-Embry dozens of times through letters. Newton-Embry is aware of the retaliation against Plaintiff and the denial of medical care, however, Newton-Embry has failed to address the issues, resulting in emotional and physical stress for Plaintiff. *Id*. at 28.

Plaintiff also claims that on or about February 6, 2019, Perry and Defendant OSP Warden Mike Carpenter took Plaintiff to a solitary confinement hearing. Carpenter told Plaintiff, "I don't know you from a can of paint," which Plaintiff claims was a racist statement. Carpenter then said, "[Y]our [sic] filing all this paperwork so I'm leaving you on solitary confinement indefinitely!" Plaintiff claims Carpenter could have intervened to stop the wrongful actions of other OSP employees but refused to do so. Instead, Carpenter colluded with the employees to deny Plaintiff access to treatment and care. Carpenter also

7

allegedly retaliated against Plaintiff for filing complaints.  *Id*. at 28-29.

Plaintiff further alleges that Defendant David Cincotta, DOC General Counsel, is responsible for compliance of all DOC employees with respect to policies and law regarding the staff's treatment of inmates.  Plaintiff asserts Cincotta was put on notice about Plaintiff's allegations against the defendants in 2016, 2017, 2018, and January 2019, but he failed to take any action against any defendants.  *Id*. at 29.

**Claim Two**

Plaintiff alleges the actions of Defendants Smash, Jones-Pilkington, Morgan, VanBlaricom, Newton-Embry, Honaker, Roden, Self, and Cincotta in blocking Plaintiff's treatment and care and her access to a gender dysphoria examination were done maliciously, sadistically, and in bad faith.  Plaintiff also contends the actions of these defendants constituted medical malpractice and cruel and unusual punishment with deliberate indifference.  The actions of Defendants Smash, VanBlaricom, Honaker, and Morgan in making medical judgments based only on medical records also allegedly constituted medical malpractice and cruel and unusual punishment.  *Id*. at 29-30.

Plaintiff further claims Defendants Perry, Carpenter, Morgan, and Self retaliated for Plaintiff's filing complaints and grievances about discrimination and denial of appropriate treatment and care.  The actions of these defendants allegedly inflicted emotional and physical distress upon Plaintiff, violated Plaintiff's freedom of speech, and constituted medical malpractice and deliberate indifference.  *Id*. at 30.

In addition, Plaintiff contends the actions of Defendants Self, Smash, Pilkington,

VanBlaricom, and Honaker in accepting the diagnosis by Dr. Jones-Pilkington over the diagnosis by Dr. Diaz without a subsequent examination and diagnosis left Plaintiff with no treatment and care. The actions of these defendants also allegedly constituted medical malpractice and deliberate indifference, resulting in Plaintiff's emotional and physical distress. *Id.*

Plaintiff alleges the actions of Defendant Dr. Jones-Pilkington of intentionally giving a false diagnosis and misstating whether a gender dysphoria examination was performed were done in bad faith and constituted medical malpractice and deliberate indifference. Plaintiff also believes Dr. Jones-Pilkington's refusal to release her findings was sadistic, indicates the doctor's deceptive state of mind, and shows a pattern of illegal conduct and bad faith, constituting medical malpractice and deliberate indifference. *Id*. at 31.

The actions of Defendants Morgan, McCurdy, Newton-Embry, and Cincotta in allowing Plaintiff to go years without followup of his examinations allegedly were outrageous and done in bad faith. Dr. Diaz completed her suspected diagnosis of gender dysphoria on December 8, 2015, however, Plaintiff did not learn that Dr. Jones-Pilkington had performed a second examination until August 18, 2019. Plaintiff claims this delay constituted medical malpractice, retaliation, and deliberate indifference. *Id.*

Plaintiff claims that Dr. Jones-Pilkington was not properly trained, never having performed a gender dysphoria examination before the assessment she claimed to have performed on Plaintiff. This lack of training constituted medical malpractice, was

outrageous, done in bad faith, and was malicious and sadistic. *Id.*

Plaintiff alleges she constantly asked Dr. Self to interview her and to read the manual of the World Professional Association for Transgender Health as well as other transgender care periodicals and paperwork. Plaintiff also asked Self to help with Plaintiff's treatment and care for her constant suffering. Self allegedly refused to help Plaintiff in any manner, resulting in Plaintiff's emotional and physical distress and medical malpractice. *Id*. at 31-32.

Finally, Plaintiff alleges the inaction of Defendants Newton-Embry, McCurdy, Carpenter, and Cincotta upon being made aware of the other defendants' conduct constituted medical malpractice, cruel and unusual punishment, and deliberate indifference. *Id*. at 32.

**Defendants Honaker and Jones-Pilkington**

Defendants Buddy Honaker and Patricia Jones-Pilkington have not been served in this action. The record shows that the summons for Defendant Honaker was returned unexecuted on May 22, 2019, because he no longer was employed by DOC. [Dkt. No. 27]. Jones-Pilkington's summons was returned unexecuted on June 19, 2019, because she no longer worked at the Lexington facility where service was attempted. [Dkt. No. 30].

On September 11, 2019, the Court entered a minute order directing Plaintiff to show cause why Honaker and Jones-Pilkington should not be dismissed from this action for Plaintiff's failure to serve them pursuant to Fed. R. Civ. P. 4(m). [Dkt. No. 40]. Plaintiff responded to the Order on September 19, 2019, asserting it was the responsibility of the

United States Marshals Service (USMS) to serve the defendants, and she had met her responsibility by providing addresses for service on two occasions.  [Dkt. No. 42].

On February 4, 2020, the Court entered another Order noting that Plaintiff never submitted proper USM-285 forms to the Court with correct addresses for these two defendants.  [Dkt. No. 63].  Plaintiff was sent the USM-285 forms and was directed to complete and return them.  *Id*.  Plaintiff complied with the Order, and alias summonses were issued for Honaker and Jones-Pilkington on February 13, 2020.  [Dkt. Nos. 66, 67]. On the same date, the USMS was directed to serve the summonses. [Dkt. No. 68].  Both summonses, however, were returned unexecuted on March 10, 2020, because there was no forwarding information for either defendant.  [Dkt. Nos. 70, 71].

On July 17, 2020, the Court directed the USMS to contact the office of the DOC Director and attempt to obtain the last known addresses for Honaker and Jones-Pilkington and to advise the Court of the results.  [Dkt. No. 76].  After receiving the information, summonses were once again issued and returned unexecuted. [Dkt. No. 80, 81].  Defendant Honaker's address was not valid, and the three attempts to contact Defendant Jones-Pilkington were unsuccessful.  *Id.*

After careful review, the Court finds the USMS has made all reasonable efforts to serve Defendants Honaker and Jones-Pilkington.  "Although the Court is required to effect service of the summons and complaint for a litigant such as Plaintiff who is proceeding *IFP*, it is the *IFP* litigant's responsibility to provide sufficient information for service on the parties." *Garcia v. Foresythe*, No. CIV-14-123-C, 2014 WL 4792081, at *2 (W.D. Okla.

Sept. 24, 2014) (citing *Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir.1993) (per curiam); *Maltezos v. Giannakouros*, 522 F. App'x 106, 108 (3d Cir. 2013)).   Accordingly, Defendants Honaker and Jones-Pilkington are **DISMISSED WITHOUT PREJUDICE** from this action for Plaintiff's failure to serve them in accordance with Fed. R. Civ. P. 4.

**Defendants' Motion to Dismiss or for Summary Judgment**

Defendants Carpenter, Cincotta, McCurdy, Morgan, Newton-Embry, Perry, Roden, Self, Smash, and VanBlaricom have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or for summary judgment pursuant to Fed. R. Civ. P. 56(a).  [Dkt. No. 56].

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).  To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff.  *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed.  *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

The generous construction to be given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id.* A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Personal Participation of Defendants Joel McCurdy and David Cincotta**

Defendants Joel McCurdy and David Cincotta allege they did not personally participate in any constitutional violations. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430-31 (10th Cir. 1992). Plaintiff must show that a defendant personally participated in the alleged civil rights violation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisory status is not sufficient to support liability under § 1983. *Id. See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *See also Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.").

Plaintiff alleges Defendant McCurdy violated her rights because he was advised that Defendant Honaker misquoted a medical policy to deny Plaintiff's treatment and care, and McCurdy did nothing to correct Honaker's wrongdoing. [Dkt. No. 1 at 27-28]. Plaintiff also claims Defendant Cincotta was responsible for policy compliance by all DOC employees, however, Cincotta failed to take action against any of the defendants for their wrongful actions from 2016 through January 2019.

14

The Court finds these allegations must fail, because "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). "[S]upervisory liability 'must be based upon active unconstitutional behavior' and 'more than a mere right to control employees.'" *Serna*, 455 F.3d at 1153 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Accordingly, Defendants David Cincotta and Joel McCurdy are **DISMISSED** from this action for Plaintiff's failure to state a claim upon which relief can be granted with respect to their alleged failure to properly supervise other employees. *See* Fed. R. Civ. P. 12(b)(6). This dismissal is designated a **"STRIKE"** or **"PRIOR OCCASION"** pursuant to 28 U.S.C. § 1915(g).

**Failure to Exhaust Administrative Remedies**

Defendants allege Plaintiff has failed to exhaust the administrative remedies for her retaliation, discrimination, policy, and name claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on

15

nonexhaustion, the Court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

DOC Policy OP-090124, "Offender Grievance Process," governs DOC inmate complaints concerning incidences of prison life. [Dkt. No. 55-8]. It provides the multi-step exhaustion process an inmate must satisfy before filing a lawsuit. *Id.* An inmate first must attempt to informally resolve the complaint by talking with the appropriate staff member within three days of the incident. *Id*. at 7-8. If unsuccessful, the inmate must submit a Request to Staff ("RTS") to the appropriate staff member. *Id*. at 8-9. If the issue remains unresolved, the inmate may begin the formal grievance procedure by submitting a grievance to the Reviewing Authority. *Id*. at 9-11. Grievances concerning medical issues must be submitted to the facility's Correctional Health Services Administrator. *Id*. at 10. Grievances that are of an emergency or sensitive nature can be submitted directly to the Reviewing Authority without informal resolution. *Id*. at 16-17. This is appropriate when the inmate faces a substantial risk of personal injury, sexual harm, or other irreparable harm. *Id*. at 16. If a grievance response fails to resolve the issue, the inmate can appeal to the Administrative Review Authority ("ARA"), where a final ruling on the matter will be issued. *Id*. at 13-16. If the appeal is related to a medical issue, it should be submitted to the Medical ARA. *Id*. at 14. After all of these steps are correctly completed, the grievance process is exhausted. *Id*. at 15-16.

Many of Plaintiff's claims arise from her allegations that the defendants retaliated

16

against her for filing grievances or lawsuits, or from her complaints about mistreatment as a transgender inmate.  Plaintiff specifically alleges Defendant Charles Roden mistreated her for requesting women's clothing and make-up, and Roden failed to correct DOC policy to permit Plaintiff to possess these items.  [Dkt. No. 1 at 24-25].  Plaintiff claims Defendant Jerry Perry retaliated against her for filing a rape complaint against Perry's friend in 2015. *Id*. at 25-26.  Plaintiff also claims that Perry placed her in solitary confinement and refused to allow her to place her legal name, Lo'Re Pink, on her prison records.  *Id*.  Plaintiff alleges Defendant McCurdy retaliated against her when she complained that employees were not complying with the medical policy.  *Id*. at 27-28.  Plaintiff also claims Defendant Newton-Embry retaliated against her "for personal reasons from their childhood, and hometown issues."  *Id*.  at 28.  Plaintiff further asserts Defendant Carpenter retaliated against her for "filing all this paperwork" and placed her in indefinite solitary confinement. *Id*. at 29.

Defendants allege Plaintiff completed her administrative remedies only for the request for an additional gender dysphoria evaluation.  [Dkt. No. 55-11].  While Plaintiff completed the administrative grievance process regarding the request that prison records reflect her legal name, this was done after commencement of this lawsuit.  [Dkt. No. 55-12].  Therefore, the exhaustion requirement for this claim was not met.  *See Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Under the Prisoner Litigation Reform Act ('PLRA'), a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).  With the exception of Plaintiff's request for a supplemental gender dysphoria evaluation, the Court finds Plaintiff

has failed to exhaust administrative remedies for any claims, as set forth below.

**Grievance No. 15-33:**   The special report indicates that on September 1, 2015, Plaintiff submitted Grievance No. 15-33, marked as "sensitive," alleging she had submitted two RTSs and a medical request without a response.  After determining that the grievance was not of a sensitive nature, it was returned unanswered on September 3, 2015, because Plaintiff had not followed proper grievance procedure by submitting an RTS.   On September 10, 2015, Plaintiff appealed the response to the Medical ARA, which also returned the grievance unanswered for Plaintiff's failure to follow proper grievance procedure.  Plaintiff submitted no additional documents concerning this grievance.  [Dkt. No. 55-9].

**Request to Staff:**  On December 22, 2015, Plaintiff submitted an Offender Request form to the Medical Services Administrator to check on the status of her "Referral for Gender Associated Request."   On January 28, 2016, the DOC Medical Services Administrator returned the RTS unanswered for failure to submit a proper RTS to the law library supervisor or designated appropriate staff member at her facility.   Plaintiff submitted no additional documents concerning this request.  [Dkt. No. 55-10].

**Grievance No. 19-01:**  On November 29, 2018, Plaintiff submitted an RTS requesting the DOC to disregard Dr. Jones' medical decision concerning Plaintiff's gender dysphoria status.  The December 10, 2018, response from Dr. Smash stated that Dr. Jones was authorized by Dr. Morgan, the Chief Medical Health Officer, to perform the evaluation.  On December 19, 2018, Plaintiff filed Grievance No. 19-01 with the reviewing

authority, which denied relief on January 4, 2019.  Plaintiff was advised that the July 7, 2017, gender dysphoria report determined that Plaintiff did not meet the criteria for gender dysphoria, and there was no indication that another evaluation was warranted.  On January 10, 2019, Plaintiff appealed the facility response to the Medical ARA which also denied relief.  The response specifically stated that the documentation in Plaintiff's medical record did not indicate that another gender dysphoria evaluation was warranted, and DOC policy OP-140147 did not require additional evaluations to confirm a medical or mental health diagnosis.  [Dkt. No. 55-11].

**Grievance No. 19-313:**  On August 12, 2019, more than four months after this action was commenced on April 5, 2019, Plaintiff submitted an RTS asking DOC to recognize her legal name change to Lo'Re Pink and to correct the records accordingly.  The August 22, 2019, response advised Plaintiff that the name change had been added as an alias, and no more action could be taken.  On September 3, 2019, Plaintiff filed a grievance with the reviewing authority, which was answered on September 18, 2019.  The response advised that the issue had been addressed by the Oklahoma Court of Criminal Appeals in Case No. MA-2019-250.[3]  On September 20, 2019, Plaintiff appealed the grievance to the

---

[3]  The Court of Criminal Appeals held that because Plaintiff's original judgment and sentence in Muskogee Country Case No. CRF-1982-457 was entered in Plaintiff's legal name at that time of Johnny L. Hardeman, she was not entitled to amend the original judgment and sentence to reflect the name change to Lo're Pink.  *Hardeman v. Dist. Court of Muskogee Cty.*, No. MA-2019-250 (Okla. Crim. App. Apr. 17, 2019).  The Court takes judicial notice of the public records of the Oklahoma State Courts Network at http://www.oscn.net.  *See Pace v. Addison*, No. CIV-14-0750-HE, 2014 WL 5780744, at *1 n.1 (W.D. Okla. Nov. 5, 2014).

ARA, which also declined to provide additional relief.  [Dkt. No. 55-12].

After careful review, the Court finds Plaintiff failed to exhaust the administrative remedies for her claims concerning retaliation, discrimination, policy, and name change. Therefore, Defendants' motion to dismiss with respect to these claims [Dkt. No. 56] is **GRANTED** pursuant to 42 U.S.C. § 1997e(a).

**Supplemental Gender Dysphoria Evaluation**

Defendants allege they were not deliberately indifferent to Plaintiff's medical or mental health needs when they failed to provide a supplemental gender dysphoria evaluation.

Under the Eighth Amendment, prisoners have a constitutional right to medical care, which is violated when doctors or prison officials are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  Deliberate indifference "involves both an objective and a subjective component."  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).   To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  To satisfy the subjective component, there must be evidence that "the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Mata*

*v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837).  However, the "'negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.'"  *Self*, 439 F.3d at 1233 (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)).

Further, a prisoner's difference of opinion with the facility's medical staff regarding diagnosis or treatment does not itself state a constitutional violation.  *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976).  "We have consistently held that the existence of such a difference cannot alone give rise to a cause of action, and if the complaint indicates that such is the case, it must be dismissed."  *Id*. (citations omitted).  *See also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977), 435 U.S. 917 (1978) ("[A] difference of opinion as to the diagnosis and treatment between the prisoner and the medical report . . . cannot serve as a basis for a cause of action.").

Here, Plaintiff alleges the defendants were deliberately indifferent to her medical and mental health needs as a self-described transgender woman when they failed to provide a third gender dysphoria evaluation.  Plaintiff's first evaluation by Psychologist Heather Diaz on December 8, 2015, stated that, "[b]ased upon the clinical interview and over the past few months working with the offender as his primary QMHP it appears he meets DSM-IV-TR criteria for Gender Identity Disorder; however, *it is only suspected at this time*."  [Dkt. No. 57-1 at 79-80 (emphasis added)].

Dr. Patricia Jones subsequently made the following general findings in her July 7, 2017, Confidential Psychological Report of Plaintiff's May 25, 2017, evaluation:

21

> Inmate Hardeman *does not meet the criteria for Gender Dysphoria at this time*.  Although Hardeman does verbalize a marked incongruence between experienced/expressed gender and assigned gender, Hardeman does not experience the dysphoria required for the diagnosis.  In addition, Hardeman's symptoms meet the diagnostic criteria for Histrionic Personality Disorder.  One of primary aspects of this disorder is suggestibility.  It is the opinion of the assessing psychologist that Inmate Hardeman has been strongly influenced by the well-meaning, but erroneous, guidance of a prior clinician and an external advocacy group to define Inmate Hardeman's environmental-based distress as an internalized Gender Dysphoria.

[Dkt. No. 57-1 at 28 (emphasis added)].

Plaintiff insists that the first evaluation resulted in a diagnosis of Gender Dysphoria, when the conclusion actually was that the condition was "only suspected."  Plaintiff maintains that the second, allegedly conflicting diagnosis of histrionic personality disorder rather than gender dysphoria should allow him to "break the tie" with a third evaluation.  Plaintiff, however, cites to no prison policy or legal authority to support her belief that she should be evaluated until she receives the diagnosis she is seeking.  DOC Policy OP-140147 sets forth the procedures for treating Gender Nonconforming Inmates, however, it does not require multiple evaluations.  [Dkt. No. 55-4].

Plaintiff's misinterpretation of the initial evaluation and disagreement with the second evaluation do not give rise to any constitutional right for a third evaluation.  Further, the subjective component of the analysis for deliberate indifference is not satisfied when the plaintiff simply complains of an "inadvertent failure to provide adequate care, negligent misdiagnosis, or . . . difference of opinion with medical personnel regarding diagnosis or treatment."  *Clemmons v. Bohannon*, 956 F.2d 1523, 1529 (10th Cir. 1992).  *See also*

*Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (holding that no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the treatment received by an inmate).

After careful review, the Court finds there are no genuine issues of material fact with regard to the fact that Plaintiff is not entitled to an additional gender dysphoria evaluation. Accordingly, Defendant's motion for summary judgment for this claim [Dkt. No. 56] is **GRANTED**.

**State Law Claims**

The preceding analysis disposed of all of Plaintiff's claims arising under federal law, and, consequently, the basis for federal subject matter jurisdiction. "Under these circumstances, the district court may decline to exercise continuing 'pendent' or supplemental jurisdiction over plaintiff's state claims." *Lancaster Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966)). The Court thus **DECLINES JURISDICTION** over Plaintiff's state law claims.

**THEREFORE,**

1.      Defendants Honaker and Jones-Pilkington are **DISMISSED WITHOUT PREJUDICE** for Plaintiff's failure to serve these defendants in accordance with Fed. R. Civ. P. 4.

2.      Defendants' motion to dismiss Defendants Joel McCurdy and David Cincotta

pursuant to Fed. R. Civ. P. 12(b)(6) for their lack of personal participation [Dkt. No. 56] is **GRANTED**, and this dismissal shall count as a **"STRIKE"** or **"PRIOR OCCASION"** pursuant to 28 U.S.C. § 1915(g).

     3.     Defendants' motion to dismiss as unexhausted Plaintiff's claims concerning retaliation, discrimination, policy, and name change [Dkt. No. 56] is **GRANTED** pursuant to 42 U.S.C. § 1997e(a).

     4.     Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 regarding a supplemental gender dysphoria evaluation [Dkt. No. 56] is **GRANTED**.

     5.     The Court **DECLINES JURISDICTION** over Plaintiff's state law claims.

     6.     Plaintiff's motion to supplement [Dkt. No. 82] is **DENIED AS MOOT**.

     **IT IS SO ORDERED** this 24th day of March 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE